Appellant, Marlon B. Taylor, appeals his conviction in the Summit County Court of Common Pleas. We affirm in part and reverse in part.
 I.
On October 30, 1998, at approximately 1:03 a.m., Meleah Barnett placed a call to 9-1-1 reporting that she had just been raped in her home. At that time, Ms. Barnett resided on Manchester Road in Summit County, Ohio with her then five-year-old daughter, Jacora. Ms. Barnett stated that she and her daughter were in bed when she heard a loud noise followed by shattering glass and footsteps. She started toward the steps but stopped when she realized someone was approaching. The intruder turned her around, pushed her into the room, and forced her to lie face down upon the bed. He then attempted to have sex with her, performed oral sex on her, and forced his penis into her throat. The intruder kept a pillow over her face. Ms. Barnett stated that her daughter was sitting by her side, attempting to pull the pillow away from her mother's face. When he was finished, the intruder poured a bottle of rubbing alcohol over her face and body before running out of the house.
When the police arrived, they found her door had been broken into and mud remains left from the door to other areas of the house. Ms. Barnett told the police that the man who accosted her had been wearing a tan ball cap, plaid shirt, and a leather coat. When questioned, she responded that it could have been Mr. Taylor. She stated that she had met Mr. Taylor once when she was sitting on her porch. Ms. Barnett had given him her phone number, and they had talked twice. She knew that he lived down the street in an area where muddy construction was occurring. She denied ever having a sexual or romantic relationship with Mr. Taylor.
Ms. Barnett's neighbor, Albert Dyer, stated that he had also heard the breaking of glass and later saw a man of medium build with a short haircut style leaving the house. Mr. Dyer noted that the man was wearing a brown or black coat. Jacora corroborated on the witness stand, testifying that she heard a "big boom," and then, someone threw her mother on the bed and covered her with a pillow. She could not recall anything else other than the fact that her mother had been crying.
The night of the incident, Officer Angela Parnell of the City of Akron Police Department went to the house where Mr. Taylor had been staying. Mr. Taylor told Officer Parnell that he had been with a friend named Lloyd that evening and had only gotten home thirty minutes earlier. Officer Parnell talked to Lloyd to verify Mr. Taylor's alibi and then followed up by returning to Mr. Taylor's residence to ask him for the clothing he had been wearing that evening. He produced a red tank top, a cream Alabama ball cap, a red plaid shirt, and brown work boots. When Officer Parnell told Mr. Taylor that someone had raped Ms. Barnett, Mr. Taylor stated that Ms. Barnett could have fabricated the story because he had previously had sexual relations with her.
On May 26, 2000, Mr. Taylor was indicted by the Summit County Grand Jury for the offenses of two counts of rape, in violation of R.C.2907.02(A)(2), and one count of aggravated burglary, in violation of R.C. 2911.11(A)(1). A bench trial was held on all charges, commencing on December 18, 2000.
At trial, Detective Michael Fox of the City of Akron Police Department testified that he had processed the scene. He stated that Ms. Barnett's door had been shattered and broken. He also stated that he took fingerprints. Only one fingerprint on the alcohol bottle had sufficient detail to be analyzed; however, it did not match Mr. Taylor. Detective Brian Reilley of the City of Akron Police Department also testified as to being on the scene on the night of the incident. He stated that he observed Ms. Barnett in an emotionally distraught state. He testified that he had interviewed Mr. Taylor at the police station during the early morning hours on the day of the incident. Mr. Taylor told him that he had been to Ms. Barnett's house several days before the incident. At that time, although Ms. Barnett was not at home, some of her friends had let him in the house. He proceeded to look around and used the restroom. Mr. Taylor did not admit to being in Ms. Barnett's home the night of the incident nor did he state that he had ever had a sexual relationship with her. Detective Reilley testified that the results from the DNA tests from Ms. Barnett's nightshirt showed a mixture of DNA from both Mr. Taylor and Ms. Barnett.
Parole Officer Joe Delaney took the stand at trial and stated that he had weekly meetings with Mr. Taylor since July of 1998. He testified that Mr. Taylor regularly wore a black leather jacket to the meetings. Mr. Delaney also described his attempted assistance in serving Mr. Taylor with an arrest warrant on March 23, 1999. He stated that he was unable to serve the warrant because Mr. Taylor drove away at a high rate of speed when the police arrived. Mr. Taylor escaped the police by abandoning his car and was not arrested until he was later found in Alabama.
The state called David Serdinak, who recently pled guilty to receiving stolen property and a parole violation. He testified as to a conversation that he had with Mr. Taylor during which Mr. Taylor told Mr. Serdinak that he was going to subpoena him to testify that Mr. Serdinak took Mr. Taylor to a girl's house on Manchester Road. Mr. Serdinak stated that he, in fact, never drove Mr. Taylor anywhere on the night in question, but he did remember Mr. Taylor telling him about a consensual sexual act he had with a woman.
Mr. Taylor testified in his own defense. He stated that he had met Ms. Barnett at her house where she gave him her telephone number. Mr. Taylor said that he called and, three days later, began a consensual sexual relationship with her. He said that they had sex a second time before October 29, 1998. On the night in question, he said that he had been with his friend Lloyd but got a ride back to Manchester Road somewhere between midnight and 1:00 a.m. in the morning. He testified that he knocked on the side door, and Ms. Barnett let him inside her home. While they were upstairs having sex, they heard glass breaking. Mr. Taylor testified that Ms. Barnett then went down to the basement and came back claiming that someone had stolen her boyfriend's drugs. She accused Mr. Taylor of "set[ting] her up." Mr. Taylor stated that Ms. Barnett was then going to call the police to report a burglary. They argued, and he left. Mr. Taylor testified that he had been wearing all blue clothing that night. He said that he had initially been lying when he gave the police his other clothing. He also conceded that, in his initial conversation with the police, he did not admit to being at Ms. Barnett's home that night.
Mr. Taylor called Kevin Williams, a prisoner at Richland Correctional Institute, to the stand. The Court sustained an objection on hearsay grounds. Defense counsel proffered that Mr. Williams would have testified that Ms. Barnett told him that she would drop any charges against Mr. Taylor for $5,000.
In a verdict journalized on December 27, 2000, the court found Mr. Taylor guilty of all charges contained in the indictment. The court noted the believability of the victim's story and contrasted that with Mr. Taylor changing stories to fit the facts. At the sentencing hearing, Mr. Taylor was sentenced accordingly. Immediately following the sentencing, the trial court proceeded to conduct a sexual offender classification hearing. Mr. Taylor's counsel did not object to the lack of notice for the hearing. The trial court determined Mr. Taylor to be a sexual predator. This appeal followed.
 II.
Mr. Taylor asserts three assignments of error. We will discuss them each in turn.
 A. First Assignment of Error THE TRIAL COURT'S VERDICT OF GUILTY ON ALL COUNTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FURTHER, THE CONVICTIONS OF THE DEFENDANT FOR THE CHARGES OF AGGRAVATED BURGLARY AND RAPE WERE NOT SUSTAINED BY SUFFICIENT EVIDENCE AND SHOULD BE REVERSED.
Mr. Taylor asserts that his convictions were against the manifest weight of the evidence. He also asserts that the evidence before the trial court was insufficient to sustain his conviction. We disagree.
 Manifest Weight
When determining whether a conviction was against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
In order to find Mr. Taylor guilty on the rape charges, the prosecution was required to prove beyond a reasonable doubt that Mr. Taylor had: (1) engaged in sexual conduct, (2) with Ms. Barnett, (3) when Mr. Taylor compelled Ms. Barnett to submit, (4) by force or threat of force. R.C.2907.02(A)(2). To secure a conviction on the charge of aggravated burglary, the prosecution was required to prove beyond a reasonable doubt that Mr. Taylor: (1) by force, stealth, or deception, (2) trespassed, (3) in an occupied structure, (4) with the purpose to commit any criminal offenses, (5) when Mr. Taylor inflicted, or attempted, or threatened to inflict physical harm on another. R.C. 2911.11(A)(1).
Ms. Barnett testified at trial that she and her daughter were in bed at their home on Manchester Road in the early morning hours of October 30, 1998. She stated that someone forcefully broke down her door and came up the steps toward her bedroom where she was compelled to lie on her bed with a pillow over her face while the intruder attempted to have sex with her, performed oral sex on her, and forced his penis into her throat. When finished, the intruder poured rubbing alcohol over her body.
Immediately after the incident, Ms. Barnett called the police. She told them that she could not identify her assailant but saw that he was wearing a tan ball cap, plaid shirt, and a leather coat. In response to police questions, Ms. Barnett stated that the intruder could have been Mr. Taylor, a man whom she met once before and talked to twice on the telephone. Mr. Dyer, Ms. Barnett's neighbor, testified that he heard breaking glass followed by a man wearing a brown or black coat leaving the house. Ms. Barnett's daughter stated that she remembered a loud noise followed by a man throwing her mother on the bed and smothering her with a pillow. Mr. Taylor's parole officer testified at trial that he knew Mr. Taylor to regularly wear a black leather coat.
Officer Parnell testified that, when asked to produce the clothing he had worn that night, Mr. Taylor handed over a red tank top, a cream colored Alabama ball cap, a red plaid shirt, and brown work boots. At trial, Mr. Taylor stated he was lying when he handed over those particular clothes and, in reality, had been wearing all blue that night. Detective Reilley testified that the results from the DNA tests from Ms. Barnett's nightshirt showed a mixture of DNA from both Mr. Taylor and Ms. Barnett. Mr. Taylor, when questioned at both his house and the police station, did not admit to being at Ms. Barnett's house that night. At trial, he explained that he had not told the truth at first. He stated that he had been in the house but that he was engaged in a consensual sexual act with Ms. Barnett. He felt that Ms. Barnett was now setting him up.
Although Mr. Taylor presented conflicting testimony, we refuse to overturn the verdict because the trial court believed Ms. Barnett whose description of the events was consistent and was corroborated by several other witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." Statev. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. We find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Mr. Taylor of rape and aggravated burglary; therefore, we conclude that Mr. Taylor's convictions on these counts were not against the manifest weight of the evidence.
 Sufficiency
A manifest weight challenge determines whether the state has met its burden of persuasion and does not view the evidence in the light most favorable to the state. State v. Leyman (Oct. 4, 2000), Medina App. No. 2970-M, unreported, at 5-6. Whereas, "[t]he test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), Summit App. No. 18303, unreported, at 3-4. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. at 4. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (emphasis omitted.) Statev. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Having already found that Mr. Taylor's convictions were supported by the manifest weight of the evidence, we find that there was sufficient evidence that Mr. Taylor did commit the two counts of rape and one count of aggravated burglary. Accordingly, Mr. Taylor's first assignment of error is overruled.
 B. Second Assignment of Error THE TRIAL COURT COMMITTED ERROR IN ITS FAILURE TO GIVE NOTICE OF THE DATE, TIME, AND LOCATION OF THE SEXUAL OFFENDER CLASSIFICATION HEARING AND IN ITS FAILURE TO CONSIDER FACTORS UNDER R.C. 2950.09.
Mr. Taylor asserts that the trial court erred when he was not given notice of his sexual offender classification hearing. We agree.
Following the sentencing of Mr. Taylor, the court proceeded immediately to the sexual offender classification hearing. Defense counsel did not make an objection to going forward with the hearing at that time. Under R.C. 2950.09, a court must give both the offender and the prosecutor, who prosecuted such offender, notice of the date, time, and location of the hearing. R.C. 2950.09(B)(1). At such hearing, both parties receive the opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses. Id.
The notice requirement for sexual offender classification hearings is mandatory under R.C. 2950.09(B)(1), and accordingly, lack of such notice constitutes civil plain error. State v. Gowdy (2000), 88 Ohio St.3d 387,399. We conclude that Mr. Taylor's sexual predator classification must be vacated and remand the matter to the trial court for a sexual offender classification hearing with proper advance notice given to each party in accordance with Gowdy. See id. Mr. Taylor's second assignment of error is sustained.
 C. Third Assignment of Error THE REPRESENTATION OF THE DEFENDANT BY TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF DEFENDANT'S RIGHTS AS GUARANTEED TO HIM BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Mr. Taylor maintains that trial counsel was so defective as to require a reversal of his conviction. Specifically, Mr. Taylor asserts that his counsel did not adequately cross-examine the witnesses when such counsel failed to ask a more effective line of questions. We disagree.
A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v. Richardson (1970),397 U.S. 759, 771, 25 L.Ed.2d 763, 773, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
Mr. Taylor has asserted that he was denied the effective assistance of counsel when trial counsel did not delve into certain topics with witnesses. Specifically, he claims that Ms. Barnett should have been questioned as to her supposed conflicting statements and a meeting she had with Mr. Williams. Additionally, Mr. Taylor felt that Ms. Barnett's daughter, Jacora, should have been more extensively cross-examined and asked different questions. Finally, Mr. Taylor states that Mr. Delaney showed an "obvious bias" resulting in "absurd testimony" which should have been explored more in cross-examination.
Mr. Taylor has failed to show his defense counsel's choice of questions to the witnesses was anything but an acceptable trial strategy. As an attorney's selection of questions for a witness is within the realm of trial tactics, such choice made by an attorney does not constitute a deficient performance in itself. See State v. Mitts (Sept. 28, 2000), Cuyahoga App. No. 76963, unreported, 2000 Ohio App. LEXIS 4525, at *13. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,49. Furthermore, Mr. Taylor has not shown how he was prejudiced by these alleged deficiencies. Accordingly, we find that Mr. Taylor's third assignment of error is overruled.
Appellant's first and third assignments of error are overruled. His second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
SLABY, J., WHITMORE, J. CONCUR.